IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | | |
|---|---|---|
| GAIL HALL, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | No. 4:08CV04214 SWW |
| | * | |
| USABLE LIFE, | * | |
| | * | |
| Defendant. | * | |

**Memorandum Opinion and Order**

Before the Court is plaintiff's oral motion for reconsideration of subject matter jurisdiction. The Court has reviewed the parties' briefs as well as the pertinent record in the case and finds that the Court lacks subject matter jurisdiction.

**Background**

This case involves a dispute over the payment of benefits under a group long term disability insurance policy issued by defendant USAble Life("USAble") to plaintiff's employer, St. Bernard's Medical Center ("SBMC"). Plaintiff Gail Hall ("Hall") filed a complaint in state court seeking damages for breach of contract. Hall alleged that while the claim involves an employee welfare benefit plan, the complaint is not subject to the provisions of the Employee Retirement Income Security Act of 1974 as amended, 29 U.S.C. ("ERISA") because it is a church plan and therefore exempt from ERISA. USAble removed the complaint to federal court based on ERISA. Hall moved to remand asserting again that the plan at issue is a church plan and thus her claim is not preempted by ERISA.

The judge to whom the case initially was assigned allowed limited discovery and then denied Hall's motions to remand, finding she had not met her burden of proof that the plan was a

church plan. Subsequently, Hall filed a motion for summary judgment and the case was transferred to another judge. At a hearing on the summary judgment motion, Hall again raised the issue of subject matter jurisdiction. The judge recused and the case was transferred to this Court. The Court denied without prejudice Hall's motion for summary judgment and directed the parties to file briefs on the issue of subject matter jurisdiction.

## Discussion

Hall argues that the order denying her motions to remand erroneously placed the burden of proof on her to establish the case should not be removed and that the court misapplied the law in finding the plan was not a church plan. USAble argues that the doctrine of the law-of-the-case applies and the previous order finding subject matter jurisdiction should not be disturbed. USAble further argues removal was proper, the burden was on Hall to show the ERISA church plan exemption, and the court properly applied the facts and law under Eighth Circuit precedent in finding no exemption.

**Law of the Case**

"[T]he doctrine of the law of the case posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case. This rule of practice promotes the finality and efficiency of the judicial process by protecting against the agitation of settled issues." *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 815-16 (1988)(internal citations and quotations omitted). The Supreme Court also noted in *Christianson*, a case in which two federal courts each insisted that the other had jurisdiction, that "[t]here is no reason to apply law-of-the-case principles less rigorously to transfer decisions that

implicate the transferee's jurisdiction. Perpetual litigation of any issue- jurisdictional or non-jurisdictional-delays, and therefore threatens to deny justice." *Id.* at 816 n.5.

Subject matter jurisdiction is something the courts have a duty to examine at all stages of the litigation, *see Crawford v. F. Hoffman-La Roche, Ltd.*, 267 F.3d 760, 764 n.2 (8th Cir. 2001), and the law of the case doctrine does not foreclose reconsideration of subject matter jurisdiction. *See Baca v. King,* 92 F.3d 1031, 1035 (10th Cir. 1996)(law of the case doctrine not a fixed rule that prevents a federal court from determining questions of its own subject matter jurisdiction in a given case); *DiLaura v. Power Authority of State of New York,* 982 F.2d 73, 77 (2nd Cir. 1992)(subject matter jurisdiction particularly suited for reconsideration; doctrine of law of the case permits change of position if it appears that the court's original ruling was erroneous).

The Court finds that because it has a duty *sua sponte* to examine subject matter jurisdiction at all stages of the litigation, the law-of-the-case doctrine does not apply to the previous ruling.

**Burden of Proof**

"Removal based on federal question jurisdiction is governed by the well pleaded complaint rule: jurisdiction is established only if a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Pet Quarters, Inc. v. Depository Trust and Clearing Corp.,* 559 F.3d 772, 779 (8th Cir. 2009). As the Supreme Court has recognized, however,

> [t]here is an exception . . . to the well-pleaded complaint rule. When a federal statute wholly displaces the state-law cause of action through complete preemption, the state claim can be removed. This is so because when the federal statute completely pre-empts the state law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law. ERISA is one of these statutes.

*Aetna Health, Inc. v. Davila,* 542 U.S. 200, 207-08 (2004)(internal citations, quotations, and alterations omitted).  The parties do not dispute that ERISA's civil enforcement provision, 29 U.S.C. § 1132(a), has such preemptive force that it converts an ordinary state common law complaint into one stating a federal claim.  However, the parties disagree about whether the plan should be considered a church plan and therefore exempted from ERISA application and the assignment of the burden of proof of the exemption.

Generally, the party seeking removal and opposing remand has the burden of establishing federal subject matter jurisdiction.  *See In re Business Men's Assur. Co. of America,* 992 F.2d 181, 183 (8th Cir. 1993).  USAble argues, however, that once it made a *prima facie* showing that Hall's claim for benefits under an employee welfare benefit plan is preempted by ERISA, it is Hall's burden to prove an exception to ERISA's jurisdiction.  In support, USAble cites cases involving the Class Action Fairness Act, 28 U.S.C. § 1332 *et seq*. ("CAFA").  The CAFA expands the subject matter jurisdiction of federal courts over class actions where there is minimal diversity and the amount in controversy exceeds $5,000.00.[1]  The CAFA contains certain exceptions to the general provisions.  In *Westerfeld v. Independent Processing, LLC*, 621 F.3d 891, 822-23 (8th Cir. 2010), the Eighth Circuit held: "Although CAFA expanded federal jurisdiction over class actions, it did not alter the general rule that the party seeking to remove a case to federal court bears the burden of establishing federal jurisdiction.  Once CAFA's initial

---

[1] As amended, § 1332(d) provides that the United States District Courts have original jurisdiction over any class action in which: (1) the matter in controversy exceeds (in the aggregate) the sum or value of $5,000,000, exclusive of interest and costs; (2) at least one member of the plaintiff class is a citizen of a State different from any defendant; and (3) the number of members of the putative class is not less than 100.

jurisdictional requirements have been established by the party seeking removal, however, the burden shifts to the party seeking remand to establish that one of CAFA's exceptions applies."[2]

ERISA applies "to any employee benefit plan if it is established or maintained  - (1) by any employer engaged in commerce . . ." 29 U.S.C. § 1003(a).  There are several different types of employee benefit plans which are exempt from enforcement under ERISA, one of which is known as a "church plan."  29 U.S.C. § 1003(b)(2).  In ruling on motions to remand where the plaintiff asserted the court lacked subject matter jurisdiction because the employee benefit plan was a church plan and thus not subject to preemption, several district courts placed the burden on the defendant to establish the plan was not a church plan.  In *Goetz v. Greater Georgia Life Ins. Co.*, 554 F.Supp.2d 831 (E.D. Tenn. 2008), a former employee brought an action in state court for long-term disability benefits.  Defendants removed to federal court, alleging federal question jurisdiction and preemption of state claims under ERISA.  Plaintiff moved to remand on the basis that the plan was a church plan that was exempted from ERISA.   In denying plaintiff's motion, the court found defendant "provided sufficient evidence . . . for this court to determine that [the employer] does not constitute a "church" for purposes of ERISA."  *Id*. at 837.  In *Geter v. St. Joseph Healthcare Systems, Inc.*, 575 F.Supp.2d 1244 (D. New Mexico 2008), the claimant brought a state court action under a long-term disability plan offered by his employer.  Defendants removed the case based on the argument that the plan was not a church plan.  The plaintiff filed a motion to remand.  The court placed the burden on the defendant, the party opposing remand, to show jurisdiction by a preponderance of the evidence. The court said:

---

[2]Section 1332(d)(4) sets out two exceptions that require district courts to decline jurisdiction, the so-called local controversy and home-state controversy exceptions.

> '[F]ederal courts have jurisdiction to hear actions brought to recover benefits under an ERISA plan.' Because '[c]hurch plans are not ERISA plans[,]' they are exempt from enforcement under ERISA. Where a suit is brought solely to recover benefits under a church plan, 'no federal question [exists] because the plan [is not] covered by ERISA.' In that case, a federal court would not have jurisdiction to hear the claim.

*Id.* at 1248. In *Welsh v. Ascension Health*, 2009 WL 1444431 (N.D.Fla. May 21, 2009), the plaintiff moved for remand based on the argument that the plan was a church plan to which ERISA did not apply. The district court concluded that Ascension, the party that removed the case, did not meet its burden of establishing that subject matter jurisdiction was proper. *See also Cambron v. USAble Life Ins. Co.*, 2007 WL 1381632 *1 n.1 (E.D.Ark. May 10, 2007)(because plaintiff moved for summary judgment as opposed to remand on contention that disability plan was "church plan" under ERISA, plaintiff had burden of proof).

In *Breuer v. Jim's Concrete of Brevard, Inc.*, 538 U.S. 691, 698 (2003), the Supreme Court stated: "Since 1948, therefore, there has been no question that whenever the subject matter of an action qualifies it for removal, the burden is on a plaintiff to find an express exception." When a complaint seeks benefits under an ERISA plan, there is federal question jurisdiction. However, when a complaint seeks benefits under a church plan, there is no federal question. Thus, a defendant who removes the case has the burden to show federal question jurisdiction exists, and that burden includes establishing that the plan is not a church plan. The Court finds USAble's reliance on the CAFA cases unpersuasive and that USAble as the removing party, has the burden to show the Court has jurisdiction.

**Church Plan**

Church plans are not ERISA plans. *Chronister v. Baptist Health*, 442 F.3d 648, 651 (8th Cir. 2009). ERISA defines "church plan" as "a plan established and maintained . . . for its

employees (or their beneficiaries) by a church or by a convention or association of churches which is exempt from tax under section 501 of Title 26." 29 U.S.C. § 1002(33)(A). Title 29 U.S.C. §1002(33)(C)(i) further provides:

> For purposes of this paragraph -
>
> A plan established and maintained for its employees (or their beneficiaries) by a church or by a convention or association of churches includes a plan maintained by an organization, whether a civil law corporation or otherwise, the principal purpose or function of which is the administration or funding of a plan or program for the provision of retirement benefits or welfare benefits, or both, for the employees of a church or a convention or association of churches, if such organization is controlled by or associated with a church or a convention or association of churches.
>
> 29 U.S.C. § 1002(33)(C)(i).

Additionally, § 1002 (33)(C)(iv) provides that "[a]n organization, whether a civil law corporation or otherwise, is associated with a church or a convention or association of churches if it shares common religious bonds and convictions with that church or convention or association of churches." 29 U.S.C. § 1002(33)(C)(iv). Another provision of 29 U.S.C. § 1002(33)(C)(ii)(II) defines the term "employee" of a church to include "an employee of an organization which is exempt from tax under section 501 of Title 26 and. which is controlled by or associated with a church or a convention or association of churches."

USAble argues that the long-term disability plan established by SBMC is not a church plan because it was not established by a church but by a hospital; that SBMC's principal purpose is to operate a hospital, not provide benefits for the employees of a church; and SBMC is not controlled by or associated with a church. Hall argues that the plan is a church plan under § 1002(33)(C)(ii)(II) because it was established or maintained by a non-church organization controlled by or associated with a church.

In *Rinehart v. Life Ins. Co. of North America*, 2009 WL 995715 (W.D.Wash. April 14, 2009), the court considered whether a long term disability plan sponsored by a hospital was a church plan as defined by ERISA. The court determined that a plan established by a corporation, controlled by or associated with a church, may qualify as a church plan in two ways: under subsection (C)(i) or under subsection (C)(ii)(II). The court stated:

> '[C]ourts have overwhelmingly interpreted § 1002(33)(C)(i) as *not limiting* the non-church organizations which can establish church plans to those whose 'principal purpose or function' is the administration or funding of a retirement . . . plan.' *Torres v. Bella Hospital, Inc.*, 523 F.Supp.2d 123, 142 (D. Puerto Rico 2007)(Citations omitted)(emphasis added). §33(C)(i) specifically deals with the situation where an employer uses a third party to administer the benefits plan, when that third party is not affiliated with the employer. In that limited instance, the third-party plan administrator must have as its *principal purpose or function* the administration of the benefits plan. Put another way, 33(C)(i) only acts to limit the church plan exception to situations where the benefits plan is administered (or funded) by a third party.
>
> §33(C)(ii)(II) operates in a wholly different capacity. Instead of limiting the number of plans that qualify as 'church plans,' this provision broadens the scope of the term 'church plan .' By defining the term 'employee' in the manner it does, § (33)(C)(ii)(II) broadens the definition of the term 'church plan.' The provision defines an employee of a church broadly, stating that an 'employee of a church ... includes an employee of an organization ... which is *controlled by or associated with* a church or a convention or association of churches.' (Emphasis added). This language necessarily increases the types of organizations which may establish and maintain 'church plans.'

*Id.* at *4.

"An organization is controlled by a church when, for example, a religious institution appoints a majority of the organization's officers or directors. To be 'associated with a church,' the corporation must share 'common religious bonds and convictions with that church or convention or association of churches." *Lown v. Continental Cas. Co.*, 238 F.3d 543, 547 (4th Cir. 2001)(internal citations omitted).

> In *Lown*, the Fourth Circuit applied a non-exclusive three-part test to determine whether an organization shares common bonds and convictions with a church. '[T]hree factors bear primary consideration: (1) whether the religious institution plays an official role in the governance of the organization, (2) whether the organization receives assistance from the religious institution, and (3) whether a denominational requirement exists for any employee or patient/customer of the organization.' *Lown*, 238 F.3d at 548. We find the Fourth Circuit's test useful and adopt it for analysis of the instant case.

*Chronister v. Baptist Health*, 442 F.3d 648, 653 (8th Cir. 2006).

The record reflects that the Olivetan Benedictine sisters[3] established St. Bernards Hospital in 1900. The original benevolent association known as Convent Maria Stein and St. Bernard's Hospital was incorporated on September 30, 1928, for the purpose of "more effectually promoting Religion, Education, Sciences and Arts, and for the further purpose of Nursing the Sick, Establishing and Operating Hospitals, and Nurses' Training Schools." [4] In June 1962, two corporations were established, Olivetan Benedictine Sisters, Inc. ("OBS") and St. Bernards Hospital, Inc., doing business as SBMC.[5] In 2000, St. Bernards Healthcare, Inc. ("SBHealthcare"), was organized as a separate legal entity by the OBS. SBHealthcare is the parent entity of a number of ministries, including St. Bernards Hospital. The reorganization in 2000 was intended to further the ministry of OBS and St. Bernards Hospital which is "[t]o provide Christ-like healing to the community through education, treatment and health services," and "[t]o provide all services of the Ministry in accordance with the *Ethical and Religious*

---

[3] The Olivetan Benedictine Sisters, an order of religious women, operate under the rules of the Roman Catholic Church and under the immediate jurisdiction of the Bishop of Little Rock. *See* docket entry 24-3, Ex. 4 at 10.

[4] Docket entry 22-2.

[5] Docket entry 24-3 at 68 (Shull Dep. at 8); docket entry 22-13 at 4.

*Directives for Catholic Health Services* as officially promulgated by the National Conference of Catholic Bishops and interpreted by the local bishop."[6]

The OBS is the sole member of SBHealthcare. The Mother Superior of the Olivetan Benedictine sisters is the chair of the Board of Directors of SBHealthcare. SBHealthcare owns and controls the hospital. It is the sole shareholder of the hospital.[7] The sole member of SBMC is SBHealthcare, and SBMC's by-laws reserve powers to the OBS.[8] Six sisters, including the Mother Superior, sit on the Board of Directors of SBHealthcare, and SBMC pays the OBS annually in return for the OBS providing overall supervision to SBMC, referred to as "strategic supervision."[9]

According to Warren Shull, the business manager for the OBS, the Catholic Church has certain rules that it wants followed if the Church is going to sponsor and put its name on a hospital as a Catholic hospital.[10] The Catholic Church is a sponsor of SBMC and requires the hospital to follow the principles and directives set out in the "Ethical and Religious Directives for Catholic Health Care Services."[11] Mr. Harry Hutchinson, vice-president of finance for

---

[6]Docket entry 22-4 at 1,3.

[7]Docket entry 24-3, Ex. 4 at 9-12.

[8]Docket entry 22-5.

[9]Docket entry 24-3 at 13.

[10]Docket entry 24-3 at 18.

[11]*Id.*;docket entry 22-6.

SBHealthcare, testified the hospital follows the tenets of the Catholic Church.[12] In its organizational chart, SBHealthcare acknowledges that the OBS is its 100% owner.[13]

SBMC obtained its status and has operated as a non-profit corporation for all relevant years as a Catholic organization under the Official Catholic Directory ("OCD").[14] SBMC is affiliated with the Catholic Church and gets its tax exempt status through the Catholic Church's overall ruling.[15]

For purposes of its pension plan, SBMC contends that it is entitled to status as a "church plan."[16] The pension plan is specifically identified as a "church plan" covering employees of SBMC and employees of OBS.[17] The designation as a "church plan" was sought because a church plan is not required to purchase insurance through the Pension Benefit Guaranty Corporation. The hospital was permitted to claim its pension plan as a church plan because of its affiliation with the OBS. Ms. Becky Frederick, the SBMC employee benefits officer, testified that one of the reasons SBMC applied for church plan status for its pension plan was to save money.[18]

---

[12] Docket entry 22-7 at 4.

[13] Docket entry 22-8.

[14] Docket entry 22-9 through 22-12.

[15] Docket entry 24-2 at 97-8 (Hutchinson Dep. at 8-9).

[16] Docket entry 24-2 at 105 (Hutchinson Dep. at 16).

[17] Docket entry 22-13 at 4.

[18] Docket entry 24-2 at 64 (Frederick Dep. at 8).

The OBS are the sole members of the board of directors of SBHealthcare, which controls SBMC. Five members of the OBS as well as the business manager for OBS serve on the 13-member board of directors for SBMC. Some of the sisters have made personal monetary contributions to SBMC, but its funding comes from self-pay patients as well as Medicare, Medicaid, private insurance, and grants. The directives for Catholic health care that SBMC adopted require, among other things, that pastoral care personnel work in association with the local parish; that the director of pastoral care be a Catholic; that it have priests assigned to the hospital to provide the sacraments; that it treat patients in accordance with Catholic teaching; and that health care decisions are to be followed as long as they do not contradict Catholic principles. The directives address beginning of life issues, such as contraception and fertilization.

USAble argues that none of the three major factors mentioned in *Chronister* apply to SBMC. It states that the OBS does not have a majority on the SBMC board, that SBMC receives virtually no financial support from the Catholic Church,[19] and argues there are no denominational requirements for employees or patients.

Plaintiff counters that the Sisters are the sole members of the SB Healthcare's Board of Directors, which controls SBMC, and five sisters as well as the business manager sit on the thirteen–member governing board of SBMC. Although SBMC may not receive direct financial assistance from the Roman Catholic Church, SBMC does receive favorable tax treatment, operating as a Catholic non-profit corporation under the OCD, and sought and received church plan status for its pension plan.

---

[19]There is evidence that some of the sisters have made personal monetary contributions to SBMC.

In *Chronister*, the court held that Baptist Health, a nonprofit corporation, which owns and operates hospitals, was not controlled by or associated with the Baptist church and, therefore, its welfare-benefit plan was not a church plan. The court stated:

> First . . . the Arkansas Baptist Convention has played no role in the governance of Baptist Hospital for nearly forty years. Moreover, the Arkansas Baptist State Convention does not appoint or approve any of Baptist Health's board members. . . . Baptist churches are not hierarchically governed and it would be inaccurate to ascribe Baptist Health's generally religious outlook to a specific Baptist Church or association of Baptist churches given their disaffiliation with the Arkansas Baptist State Convention. Second, there is no evidence that Baptist Health received any support from the Arkansas Baptist State Convention after its dissociation. The only financial support mentioned comes from the Baptist Health Foundation, which is made up of a number of local business people with no requirement of any affiliation with the Baptist faith. Third, Baptist Health's denominational requirement for certain employees of Baptist Health is limited to administrators, the president/CEO, chaplains, and board members. Management employees are instructed to be guided by Christian principles, not specific doctrines of a Baptist church. Baptist Health treats patients of all religions or faiths.

[442 F.3d at 653](#).

Unlike in *Chronister*, here the evidence indicates SBMC has ties with the Roman Catholic Church. The sole member of SBMC is SBHealthcare, which is governed by OBS. The Mother Superior of the Olivetan Benedictine Sisters is chairman of the Board of Directors of SBHealthcare and the remainder of the board members are sisters. SBMC pays the OBS for strategic planning; five sisters and the OBS business manager are on the thirteen-member board of directors of SBMC. The SBMC adheres to Catholic ethical and religious directives, priests are assigned to the hospital to provide the sacraments, and the director of pastoral care must be a Catholic.

The Court finds USAble has failed to carry its burden of proof that the long-term disability plan is not a church plan. The Court further finds that even if Hall has the burden of proof to establish the plan is a church plan, she has carried the burden of establishing that SBMC is controlled by or associated with the Catholic church. The Court thus finds it lacks subject matter jurisdiction.

IT IS THEREFORE ORDERED that this case is remanded to Pulaski County Circuit Court.

DATED this 28th day of March, 2011.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE